UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT SHEEHY, et al.,

                            Plaintiffs,

                                                    **Hon. Hugh B. Scott**

            v.
                                                    02CV592A

                                                    **Report
                                                    &
MARY ANN WEHLAGE, et al.,                            Recommendation**

                            Defendants.


            This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 12, Oct. 19, 2002; see also Docket No. 123, Order of Mar. 7, 2005, referring case

back to Magistrate Judge).   The instant matter before the Court is defendants' Robert McNeill

and Lakewood Veterinarian Service[1] ("Lakewood") (collectively "Movants") motion (Docket

No. 132) for relief from the Entry of Default entered against them (Docket No. 128).

                            **BACKGROUND**

            This is a civil rights action arising from the seizure of plaintiffs' cattle.  As noted in prior

Report & Recommendations in this action (see Docket Nos. 72, 117; see also Docket No. 38,

Mag. J. Bianchini R&R, hereinafter "VEB R&R"), familiarity with which and Decisions &

---

[1] As identified in the Complaint, see Docket No. 1, Compl. ¶ 12; Docket No. 40, Am.
Compl. ¶ 12.  It is correctly known as Lakewood Veterinary Service, see Docket No. 17, Ans.;
see also Docket No. 132, Hammond Affirm. ¶ 1.

Orders (Docket Nos. 79, 95, 123, 130) of this Court is presumed.  Plaintiffs Robert and Sandra

Sheehy and their children, are owners of a dairy farm and cattle in Scio, New York.  They used a

method of "intensive rotational grazing" to feed their cattle.  (Docket No. 1, Compl. ¶¶ 1-5, 18-

29, 31-32, "Compl."; Docket No. 38, VEB R&R at 4).  They allege that defendants made false

assertions that plaintiffs' cattle were malnourished, and, based on those assertions, obtained a

warrant to enter and search plaintiffs' farm and seize approximately 115 head of cattle.  (Docket

No. 95, Order, at 1-2.)

Sometime in August 2002, defendant Mary Ann Wehlage, an animal control officer for

Olean, asked defendants Thomas Becker and Gordon Wuethrich (agents of the United States

Department of Agriculture) to visit plaintiffs' farm, which Becker and Wuethrich did on August

15.  Wehlage allegedly asked them to provide false and misleading statements concerning the

condition of plaintiffs' cattle so that a search warrant could be obtained.  (Compl. ¶¶ 36-39.)

Knowing she needed a supporting statement from a veterinarian or an animal control officer with

personal knowledge of the existence of cruelty to animals, Wehlage allegedly induced Becker

and Wuethrich (who lacked training in cattle feeding and conditioning) to provide false and

misleading statements concerning the condition of plaintiffs' cattle (Compl. ¶¶ 40-42).  Wehlage

falsely represented that she could see the cattle from the street and falsely reported that the cattle

were underfed and suffered from a condition of feeding the cattle too much grain called "rumen

acidosis."  (Compl. ¶ 42.)

Wehlage, with approximately fifty police personnel and a search warrant, entered the

farm on August 22, 2001, to execute the warrant.  Defendant Robert McNeill, a veterinarian

employed by defendant Lakewood, arrived and (allegedly ignoring the actual condition of the

cattle) determined that the cattle should be seized due to a claim "of future potential problems."
(VEB R&R at 5; Compl. ¶¶ 50-55.)  McNeil ordered the seizure of dozens of healthy cows that
manifested no physical distress.  Defendants seized the cattle, plaintiffs' entire herd. (VEB R&R
at 5; Compl. ¶¶ 56-59.)

*Initial Complaint*

On August 16, 2002, plaintiffs filed a complaint (Docket No. 1) alleging, among other
things, that defendants negligently, wilfully, and fraudulently procured the search warrant which
authorized the search of their farm on August 21, 2001, in violation of plaintiffs' civil rights.
The Complaint alleged twelve state common law claims and a thirteenth claim under 42 U.S.C.
§ 1983, all arising from the search of plaintiffs' farm, the seizure and subsequent sale of the cattle
(including calves born and milk produced after the seizure).  (Docket No. 1, Compl. ¶¶ 81-135.)

McNeill and Lakewood served an Answer to this initial Complaint on filed on
October 31, 2002 (Docket No. 17; see Docket No. 132, Hammond Aff., Ex. B), and jointly
moved to dismiss the thirteenth cause of action on November 26, 2002 (Docket No. 22; see also
Docket No. 18 (stipulation to extend time for McNeill and Lakewood to answer)).

*Magistrate Judge Bianchini's Report & Recommendation*

This case was referred to the undersigned on October 9, 2002 (Docket No. 12), and then
transferred (pursuant to 28 U.S.C. § 636(b)(1)(B) and (C)) to Magistrate Judge Bianchini on
March 20, 2003 (Docket No. 35), for the sole purpose of deciding certain then-pending motions,
including (among others) McNeill and Lakewood's joint motion to dismiss (Docket No. 22).

Magistrate Judge Bianchini issued a Report & Recommendation on June 10, 2003,
recommending granting McNeil and Lakewood's motion to dismiss the thirteenth cause of action

3

as against them, without prejudice to plaintiffs and with leave to amend only as to this allegation

(provided that the amendment was filed within ten days or an objection was filed) (VEB R&R at

21).  He also recommended denial of the motion to dismiss defendants Becker and Wuethrich but

granting Judge Turybury's motion to dismiss the complaint as to him (VEB R&R at 6-7, 10-13,

15-21).

Upon objections to this Report & Recommendation (but none from defendants McNeill

or Lakewood or timely from plaintiffs, Docket No. 79, Order at 3-4), on January 30, 2004, Chief

Judge Arcara issued an Order adopting Magistrate Judge Bianchini's Report & Recommendation

dismissing claims against McNeill and Lakewood but granting plaintiffs leave to replead (Docket

No. 79, Order at 2, 5 & n.2 (noting plaintiffs already filed Amended Complaint)).

*Amended Complaint*

Meanwhile, plaintiffs filed an Amended Complaint on June 20, 2003 (Docket No. 40).

Plaintiffs again allege the same thirteen causes of action as in the initial Complaint.  The only

notable change in the Amended Complaint from the original was adding to the thirteenth cause of

action, specifying liability for private actors Wehlage, McNeil, and Lakewood under 42 U.S.C.

§ 1983 (Docket No. 40, Am. Compl. ¶¶ 134-36), consistent with Magistrate Judge Bianchini's

direction (see VEB R&R at 21) and one of the Sheehy children was added as a plaintiff.  All

other allegations are verbatim the same from the initial Complaint.

*Proceedings Leading to Movants' Default*

Wehlage and the Allegany County Society for the Prevention of Cruelty to Animals

("Allegany County SPCA") answered the Amended Complaint on July 1, 2003 (Docket No. 42).

Several co-defendants in this action moved to dismiss claims against them:  Becker moved for

summary judgment (Docket No. 98; <u>see</u> Docket Nos. 117 (R&R recommending granting

motion), 123 (Order adopting Docket No. 117 R&R)); Wuethrich moved to dismiss or for

summary judgment (Docket No. 56; <u>see</u> Docket Nos. 72 (R&R recommending grant of

Wuethrich's motion), 95 (Order granting Wuethrich's motion for summary judgment)); Judge

Turybury renewed his motion to dismiss (Docket Nos. 19, 51; <u>see</u> Docket Nos. 72 (R&R

recommending grant of Judge Turybury's motions), 79 (Order granting Judge Turybury's

motions)).  Thus, the remaining defendants are Wehlage, the Allegany County SPCA, and

movants McNeill and Lakewood.[2]

McNeill and Lakewood never answered the Amended Complaint.  Plaintiffs contend that

these defendants did not seek an extension of time to answer or request that plaintiffs consider

their Answer to be an answer to the Amended Complaint (Docket No. 134, Pls. Atty. Aff. ¶¶ 6-

12).  According to plaintiffs, McNeill and Lakewood did not appear at four arguments where

their failure to answer was discussed (Docket No. 134, Pls. Memo. at 4).  In the June 17, 2004,

Order considering an earlier Report & Recommendation, Chief Judge Arcara noted that claims

remain against McNeill and Lakewood but they had not answered them (Docket No. 95, Order at

2-3 n.2, 10), the case was referred back to the undersigned for setting a date for service of an

Answer to the Amended Complaint by McNeill and Lakewood (<u>id.</u> at 10).  This Court then

denied plaintiff's request for a Rules 16 and 26(f) conference because not all of the defendants

had appeared in the action (Docket No. 96; <u>see also</u> Docket No. 134, Pls. Memo. at 5), in

particular that McNeill and Lakewood had not answered the amended pleading.  Meanwhile, on

---

[2]Defendant American Society for the Prevention of Cruelty to Animals was voluntarily
dismissed from the case on January 7, 2003, Docket No. 33.

September 20, 2004, plaintiffs moved (among other relief) for an order to take the deposition of McNeill (Docket No. 105), which was later denied (Docket Nos. 117). On October 13, 2004, this Court set a deadline of November 15, 2004, in which McNeill and Lakewood were to answer the Amended Complaint (Docket No. 112). In an Order adopting another Report & Recommendation, Chief Judge Arcara noted that McNeill and Lakewood were among the remaining defendants in this action but had not served an Answer despite a previous order to do so. The Court then ordered these defendants to answer by March 16, 2005, or face the possibility of entry of default (Docket No. 123, Order at 9-10). The Court Clerk entered default against McNeill and Lakewood (Docket No. 128). As plaintiffs note, McNeill and Lakewood violated two Court Orders for their answer or plea as to the Amended Complaint, as well as five Court references to their failure to answer (Docket No. 134, Pls. Memo. at 5).

*Motion for Relief from Default*

With new counsel (see Docket No. 131), McNeill and Lakewood jointly moved for relief from the default judgment. McNeill states in his affidavit that he was not aware of the Amended Complaint or the necessity to serve an Answer to it and he was only recently made aware of the default judgment (Docket No. 132, McNeill Aff. ¶ 11). McNeill discharged former counsel of record and retained present counsel (id. ¶ 12). The Court set a briefing schedule for this motion, with responses due by September 9, 2005; replies (if any) were due by September 19, 2005, and the motion deemed submitted as of September 19, 2005 (Docket No. 133). Movants filed a timely reply (Docket No. 136) in which they contend that any delay in discovery was due to other defendants (mainly the servicemen's stay issued to Becker) (id. Movants' Atty. Reply Affirm. ¶¶ 10, 11).

6

## DISCUSSION

I.      Standard

Under Rule 55, for good cause shown the Court may set aside an entry of default.  Fed. R.

Civ. P. 55(c).  Rule 60(b) states the grounds when the Court may relieve a party of an order,

namely (possibly applicable here) for mistake, inadvertence, surprise, or excusable neglect, Fed.

R. Civ. P. 60(b)(1).  Whether to vacate a default judgment, the Court must examine whether the

default was willful, whether defendant had a meritorious defense, and the level of prejudice to

the non-defaulting party if relief is granted.  See American Alliance Ins. Co. v. Eagle Ins. Co.,

92 F.3d 57, 59 (2d Cir. 1996).

II.     Application

Here, note that an Entry of Default was entered, see Fed. R. Civ. P. 55(a); plaintiffs have

not yet taken the second step to obtain a default judgment against McNeill or Lakewood, see Fed.

R. Civ. P. 55(b).  McNeill and Lakewood note that they technically were not in default since they

answered the initial Complaint (see Docket No. 136, Movants' Atty. Reply Affirm.¶ 3).  They

also contend that, the amendments were limited comparing the Amended Complaint with the

original Complaint and former counsel had contacted plaintiffs' counsel when the Amended

Complaint was filed and indicated that their Answer would serve as their response to the

amended pleading (Docket No. 132, Paul Hammond, Esq., Affirm. ¶ 6; Movants' Memo. of Law

at 2).  They argue that former counsel did not note decretal paragraphs in subsequent Orders that

dealt with them (id. Hammond Affirm. ¶ 8).

Plaintiffs, however, deny receiving a telephone call from movants' former counsel

(Docket No. 134, Pls. Atty. Aff. ¶¶ 7-12; Docket No. 134, Pls. Memo. at 8-9) and noted that

movants failed to appear in subsequent proceedings in this case (Docket No. 134, Pls. Atty. Aff. ¶ 13).  They find incredible that defense counsel failed to read the Orders that commanded these defendants to answer the Amended Complaint by specific dates (id. ¶ 26; Docket No. 134, Pls. Memo. at 12), specifically the Order addressed solely to these defendants.  Plaintiffs note that these defendants disregarded two Orders that required an answer be served (Docket No. 134, Pls. Memo. at 12).  They argue that the action was "stymied awaiting" movants' answer (Docket No. 134, Pls. Memo. at 10), claiming extreme financial hardship and physical health decline due to the two-year delay in prosecuting this action (id. at 11; Docket No. 134, Robert Sheehy Aff. ¶ 22) and delays in discovery (even losing the opportunity to depose a witness, Docket No. 134, Pls. Memo. at 18-19).  They contend that there was no excusable neglect under Rule 60(b)(1) to justify overturning the entry of default (Docket No. 134, Pls. Memo. at 14).

A.      Whether Default Was Willful

McNeill and Lakewood's former counsel has not established that it made his intention manifest to rely upon the Answer to address the Amended Complaint.  Former defense counsel's explanation that he disregarded the various Orders of this Court requiring a served Answer to the Amended Complaint by a certain date is incredible; disregarding a Court Order because a party believes it addressed only other parties is foolish.  Further, said counsel failed to appear in the action or do anything to advance McNeill or Lakewood's defense in this action.

The next issue is whether former counsel's neglect and default is attributable to his clients.  The willful conduct of counsel, here the willful inaction of counsel, unfortunately is attributable to the unknowing clients (cf. Docket No. 132, McNeill Aff. ¶ 11), see S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998).  Generally, the conduct of an attorney is attributable

to the client, otherwise to allow a party to evade the consequences of the acts of his agent "would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent."  Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962); McNulty, supra, 137 F.3d at 739.  A client can avoid this result if he acts with diligence to contact counsel to learn of the status of the action and to reverse the default.  See McNulty, supra, 137 F.3d at 739-40 (quoting United States v. Cirami, 535 F.2d 736, 739, 741 (2d Cir. 1976) (also known as "Cirami I").  "Where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit."  McNulty, supra, 137 F.3d at 740.

Here, movants have not indicated their diligent inquiry into the status of the action or former counsel's representation of them, see McNulty, supra, 137 F.3d at 739-40 (no showing of defendant's diligence); United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977) (remanding where client presents affidavits asserting diligent inquiries of their attorney as to the status of the action and their reliance on counsel's assurances that the matter was being handled properly) (also known as "Cirami II").  McNeill relied upon a his professional association initially to retain the former counsel (see Docket No. 132, McNeill Aff. ¶ 10) and let the action proceed without any apparent monitoring of the case on his part (see also id. ¶¶ 10, 11).  McNeill states in his affidavit that he learned of the default (at some unspecified time) and he discharged former counsel and attempted to have the default set aside by this motion (see Docket No. 132, McNeill Aff. ¶¶ 11, 12).  Even with this motion for relief from the default, movants have not submitted a proposed Answer or asserted their intention to rely upon the Answer to the initial pleading to respond to the Amended Complaint.

9

B.    Whether Movants Assert a Meritorious Defense

The movants claim a meritorious defense of qualified immunity (although they have not

attached a proposed Answer to the Amended Complaint) (Docket No. 132, Movants' Memo. of

law at 10-11).  Their initial Answer (Docket No. 17) did not assert a qualified immunity defense

now proposed in this motion.  That pleading did assert that movants entered plaintiffs' property

pursuant to a court order, and acted in good faith (cf. Docket No. 17, Ans. ¶¶ 19, 16, 20, 23), but

this was in response to the common law causes of action and not alleged against the thirteenth

cause of action under § 1983.  McNeill and Lakewood now claim that they have a meritorious

defense of qualified immunity by acting in good faith and under the color of law, acting under

New York State Agriculture and Markets Law as a agent of the police and the court in its role in

the seizure of plaintiffs' cattle (Docket No. 132, Defs. Memo at 9-11).  From plaintiffs' argument

of the merits of their claims against McNeill and Lakewood, they conclude that there can be no

finding of a meritorious defense (Docket No. 134, Pls. Memo. at 17-18), specifically arguing that

they were retained to be independent from the governmental agencies and lack any entitlement to

qualified immunity (id.).

Since former counsel has not clearly asserted a qualified immunity defense that movants

now propose, they should be given the opportunity to assert that defense through new counsel.

C.    Whether Plaintiffs Suffer Prejudice from Default

McNeill and Lakewood contend that plaintiffs were not prejudiced, but they disregard the

fact that discovery was delayed until these parties responded to the amended pleading.  Plaintiffs

emphasize their prejudice arising from the delay in these last two defendants from formally

appearing delayed discovery or even a pretrial Rule 16 conferences; for example, one witness has

10

left the state and indicated her desire not to want to return here (id. at 18). Movants counter that any delay in conducting discovery they attributed to the stay acknowledged for a codefendant, Becker (Docket No. 136, Movants' Atty. Reply Affirm. ¶ 10), construing this Court's June 29, 2004, Order (Docket No. 96) denying plaintiffs a Rule 16 conference. That text Order stated that "not all defendants, however, have appeared in this action; one defendant, Thomas Becker, was granted a stay pursuant to the Soldier's and Sailor's Relief Act of 1940, [50 U.S.C. App. § 521]" (Docket No. 96). Movants are mistaken in construing this Order to refer only to Becker's situation; the initial statement that not all defendants have appeared was a reference to McNeill and Lakewood having not answered the Amended Complaint. Those were two (of several) reasons for denying a Rule 16 conference when all parties had not appeared in the action. That Order was entered days after Chief Judge Arcara's Order (Docket No. 95, June 17, 2004), which noted that McNeill and Lakewood had not answered and referred the matter to the undersigned to set a deadline date for such a pleading (id. at 10) while calling for discovery to commence without delay (id.). The delay caused by movants' failure to answer the amended pleading clearly arose when subsequent Orders were entered giving them dates in which to serve their pleading.

Nonetheless, McNeill and Lakewood argue that the preference under the law is to resolve matters on the merits (Docket No. 136, Movants' Atty. Reply Affirm. ¶ 13). While not showing diligence when former counsel represented them, movants have moved to discharge that counsel, replacing them with new counsel and asserting defenses while attempting to obtain relief from the default. With new counsel, movants should be allowed to answer the amended claims asserted against them. Therefore, McNeill and Lakewood's motion should be **granted**; movants

11

should be given a brief (no more than fifteen days), <u>final</u> opportunity to file an Answer to the

Amended Complaint to allow this case to go forward.

## <u>CONCLUSION</u>

Based upon the above, it is recommended that defendants Robert McNeill and Lakewood

Veterinary Service's motion (Docket No. 132) for relief from the Entry of Default (Docket

No. 128) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk**

**of this Court within ten (10) days after receipt of a copy of this Report & Recommendation**

**in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil**

**Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S**

**ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  <u>Thomas v.</u>

<u>Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak</u>

<u>v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case

law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                  s/HBS
                                           Hon. Hugh B. Scott
                              United States Magistrate Judge

Dated: Buffalo, New York
         September 26, 2005