UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT SHEEHY, et al.,

                Plaintiffs,

**Hon. Hugh B. Scott**

v.

02CV592A

**Order**

MARY ANN WEHLAGE, et al.,

                Defendants.

Before the Court is a follow up to the motions to dismiss for failure to comply with prior discovery Orders by defendants Wehlage and the Allegany County Society for the Prevention of Cruelty to Animals (collectively the "SPCA defendants") (Docket No. 215) and defendants McNeill and Lakewood Veterinary Service's (collectively the "McNeill defendants") motion to dismiss for failure to prosecute (Docket No. 219). In the Report & Recommendation recommending that both motions be granted, this Court also authorized the successful movants to apply to recover their reasonable motion costs (including the SPCA defendants' costs for hosting the aborted depositions and the McNeill defendants' costs for travel to that non-event) (Docket No. 236, Report & Rec. at 23-26). Both sets of movants filed timely fee applications for Rules 37 and 16(f) sanctions (Docket Nos. 237[1] (McNeill defendants), 238[2] (SPCA defendant))[3].

---

    [1]Included with this motion is counsel's declaration with exhibit.

    [2]Also included with this motion is counsel's declaration with exhibits.

    [3]In opposition to these applications, plaintiffs counsel filed separate papers. Jeanne Vinal submitted a declaration, Docket No. 240, which co-counsel Richard Baumgarten joined, see

## BACKGROUND

Familiarity with the prior proceedings is presumed from the last Report & Recommendation (Docket No. 236). Plaintiffs, a family operating a dairy farm who sued those they believed were responsible for the seizure of over 100 head of their cattle in August 2001, refused to appear at a Court-ordered deposition in December 2006. This caused the SPCA defendants, who noticed the deposition, to incur the costs for retaining a court reporter as well as motion costs, and caused the McNeill defendants to incur costs in travel from their counsel's offices in Syracuse to Buffalo for the aborted depositions (see id., Report & Rec. at 24, 26). In the Report, the Court imposed these costs, as well as movants' reasonable motion costs, as sanctions against plaintiffs and their counsel (Docket No. 236, Report & Rec. at 24-25, 26), finding that plaintiffs lacked any substantial justification for not appearing at the ordered deposition or failing to comply with Court Orders (id. at 24). As for the McNeill defendants, the Court also found that, under Rule 16(f), the Court may enter such Orders as are just when a party fails to obey a pretrial or scheduling Order, including sanctions (with reference to Rule 37 sanctions) (id. at 25). In scheduling the fee applications, the Court also wanted the parties to address apportionment of sanction liability as between plaintiffs and their counsel (id. at 26). The Court ordered the movants to submit their applications for reasonable motion costs within five business days from entry of that Report & Recommendation on January 29, 2007 (or by February 5, 2007), and plaintiffs had ten business days from filing that Report (or by February 12, 2007) to respond to those applications (id. at 27, Notice of Electronic Filing).

---

Docket No. 241, Reply Affirmation ¶ 3. Baumgarten's reply affirmation raised additional grounds, Docket No. 241. Baumgarten successfully moved for leave to file his affirmation out of time, Docket Nos. 242 (Motion), 243 (Order).

*Fee Applications*

First, the McNeill defendants submitted their application (Docket No. 237). They seek a total of $2,129.70, for attorneys' fees in making their motion ($1,980.00) and counsel's travel expenses ($149.70) (id., McNeill Defs. Atty. Decl. ¶¶ 6, 4, Ex. A). Defense counsel cites a rate of $165 per hour for the 12 hours of work leading up to this motion (id. Ex. A), but does not state her level of experience (either in general or in federal courts) or state whether this rate is reasonable for this District. The McNeill defendants will accept the Court's apportionment of liability as between plaintiffs and their counsel (id. ¶ 8).

The SPCA defendants submitted their timely application for a total of $10,681.50 (Docket No. 238, SPCA Defs. Atty. Decl. ¶ 15). The SPCA defendants seek $3,799.00 in attorney's fees for preparing for the deposition (discounted from $6,100 to eliminate counting for dual purposes) (id. ¶¶ 3, 4, Ex. A). They also are applying for $6,882.50 in attorneys' fees relative to making their motion to dismiss (id. ¶ 5, Ex. B), again discounted (from $9,694.00), to avoid duplication (id. ¶ 6). In support of this application, their counsel (a partner at Hodgson, Russ) indicates that she spent about 8.6 hours preparing for the deposition and 15.5 hours drafting the moving papers, all at her billing rate of $210 per hour (id., Exs. A, B), a rate previously deemed reasonable by this Court (Docket No. 234, Order at 5-6). They also cite the time of an associate (a total of 43.4 hours at $150 per hour, with some time entries occasionally discounted) and paralegal (a total of 16.6 hours at $80 per hour, see Docket No. 238, SPCA Defs. Atty. Decl. ¶ 11 (noting that this rate is less than standard for paralegals at her level of experience), Ex. A) in preparing for the deposition and preparing the moving papers (id. ¶¶ 9-11, Exs. A, B). The associate was brought in to assist lead counsel in preparing for the deposition

3

and the motion while that counsel was preparing for a trial in another case (id. ¶ 10), for which the SPCA defendants discount her time charge as a result (id., Exs. A, B). The SPCA defendants urge that liability for their fees be equally split between plaintiffs and their counsel (id. ¶¶ 13, 15), similar to the apportionment of fees awarded on a previous discovery sanction (id. ¶ 13; Docket No. 234, Order, at 10-11). They conclude by asking the Court to order payment of such sanction within fourteen days of entry of the Order imposing the sanction (Docket No. 238, SPCA Defs. Atty. Decl. ¶ 15). The SPCA defendants, however, do not claim any costs associated with obtaining a court reporter for the depositions.

*Plaintiffs' Response*

Plaintiffs respond through their counsel separate documents (Docket Nos. 240, 241). Jeanne Vinal first stated that an award of costs as well as an order dismissing the Complaint was unwarranted (Docket No. 240, Vinal Decl. ¶¶ 5, 7). As for the apportionment of any potential sanction, Vinal contends that she also spent time preparing for the depositions that did not occur (id. ¶¶ 8-11). On Friday, December 1, 2006, plaintiffs asked Vinal if the depositions could be relocated or the dates changes and Vinal replied that the depositions were ordered and the schedule of party and non-party depositions was already in place (id. ¶¶ 12-13). She warned plaintiffs that if the depositions did not go forward as ordered, it would be a violation of the Court Order and make other, non-party depositions nearly impossible to complete before the then Scheduling Order deadline for discovery of December 21, 2006 (id. ¶ 13). Unbeknownst to Vinal, plaintiffs sent their December 1, 2006, fax to the Court and opposing counsel and Vinal did not get her copy during working hours that day (id. ¶ 15; see Docket No. 241, Baumgarten Reply Affirm. ¶ 12). Vinal read the plaintiffs' fax on Monday, December 4, 2006, but still

believed that plaintiffs would come and not unilaterally decide to miss the proceeding (Docket No. 240, Vinal Decl. ¶ 16). When the plaintiffs did not appear that morning, Vinal called them and confirmed their non-appearance. Vinal immediately called defense counsel, including trying to reach McNeill's counsel (then en route from Syracuse). (Id. ¶¶ 17-18.) Vinal, with co-counsel Baumgarten, spent the balance of December 4 trying to convince plaintiffs to come up for the depositions (id. ¶ 19; see Docket No. 241, Baumgarten Reply Affirm. ¶ 16). They then continued during that week trying to get plaintiffs to come up for their depositions (Docket No. 240, Vinal Decl. ¶ 20; Docket No. 241, Baumgarten Reply Affirm. ¶ 17), offering to pay their gasoline charges, to identify possible forms of public transportation, or to arrange for plaintiffs to stay with the Vinals' during the course of the depositions (Docket No. 240, Vinal Decl. ¶ 21; Docket No. 241, Baumgarten Reply Affirm. ¶ 18). Despite offers to resolve the financial reasons for plaintiffs not coming, plaintiffs raised other issues, such as the fear of separating family members, the need to have someone home to tend to the animals, no neighbors or relatives were available to assist, only the parents have driver's licenses, Sandra Sheehy has a back condition that prevented long distance driving and Robert Sheehy has other medical issues (e.g., Docket No. 240, Vinal Decl. ¶ 19). "Ultimately, the Sheehys just would not come" despite counsels' pleading and admonitions (id. ¶ 23). Vinal disputes the assertion (see Docket No. 236, Report & Rec. at 17-19; see also Docket No. 235, SPCA Defs. Atty. Decl. ¶ 9 n.1) that she could have driven down to pick plaintiffs up, since the drive to plaintiffs' farm is a distance of two hours, requiring counsel to leave at 4 am for a 9 am deposition and such transportation counsel

5

considers to be a non-disbursement expense that counsel ethically cannot pay[4] (Docket No. 240, Vinal Decl. ¶ 23 n.1).  Plaintiffs' counsel conclude that they did everything to convince their clients to appear in Buffalo and did nothing to prevent plaintiffs' compliance with Court Orders (id. ¶ 25).  Plaintiffs' counsel themselves prepared for these depositions and incurred costs (id.).  Vinal argues that plaintiffs should not be sanctioned because they believed that they physically or financially could not come and plaintiffs lacked bad motive in disregarding the Order (id. ¶¶ 27, 28).  Vinal points to other delays during the course of this case[5] (id. ¶ 31) as a factor in considering whether to impose the further sanction of costs and the fact that defendants did not pay any sanctions for their prior defaults (id.).

Co-counsel Richard Baumgarten joins in Vinal's declaration (Docket No. 241, Baumgarten Reply Affirm. ¶ 3) and repeats many of the assertions made by Vinal (see id. ¶¶ 5, 7-26).  He argues that plaintiffs ignored his advise, as well as the advise of the Vinal & Vinal firm, that plaintiffs had to appear at the ordered deposition (id. ¶¶ 16-18, 20, 22, 26).  After arguing the merits of dismissal of plaintiffs' claims (id. ¶¶ 28-30), Baumgarten argues that plaintiffs' counsel did not prevent their clients complying with the Order and, in fact, advised compliance and did "everything within [their] power to have the Sheehys come to the depositions" (id. ¶ 31).  He concludes that, in similar cases, courts have not imposed liability upon the attorney where the

---

[4] Curiously, the offer by co-counsel Baumgarten to pay plaintiffs' gasoline charges or housing plaintiffs are not viewed as a non-disbursement expenses that could not be ethically offered.

[5] One delay arose from the stay granted to defendant Thomas Becker under the Soldiers and Sailors Relief Act of 1940, 50 U.S.C. App. § 521, Docket Nos. 52 (motion), 71 (minute entry indicating grant of stay) from Oct. 28, 2003, to July 30, 2004, see Docket No. 98 (Becker motion for summary judgment).  Becker was granted summary judgment, see Docket Nos. 117 (Report & Recommendation), 123 (Order adopting Report).

client has refused to comply (id.), see, e.g., Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 735 (2d Cir. 1987) (upholding sanction against client of dismissal, but not against attorney, where plaintiff ignored counsel's advice).

## DISCUSSION

I.     Reasonable Motion Costs

Under Rule 37, the movants are entitled to their reasonable costs and attorneys' fees. "If the court determines to award expenses and fees, it is for the court to decide what amount is proper." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 666-67 (Civil 2d ed. 1994); see also Addington v. Mid-American Lines, 77 F.R.D. 750, 751 (W.D. Mo. 1978) (three hours at $50 per hour held excessive where opponent merely failed to make timely response to interrogatories, reducing time to one hour).

II.     Imposition of Costs as Sanction at All

The first issue is whether costs as a sanction should be imposed as well as dismissal of plaintiffs' claims. Rule 37(d) allows the Court to impose these costs "in lieu of" or "in addition" to any other sanction provided in that rule. Thus, the Court may use the extreme sanction of dismissal of an action as well as impose motion costs upon the recalcitrant party.

Plaintiffs' counsel argue that no fee sanction should be awarded, especially since this Court has recommended dismissal of the action (Docket No. 240, Vinal Decl. ¶¶ 4, 7, 31). Plaintiffs counsel deny any bad motive on plaintiffs' part in not appearing at their depositions (id. ¶ 28), but the arguments now raised against imposing costs (or imposing them on counsel)--such as the fear of separating family members, the concerns about managing the farm in their absence (id. ¶ 19)--are only now being raised for the first time. These concerns could have been raised

sooner (when the depositions were first noticed to as late as Friday, December 1, before the Monday, December 4, first deposition).

Plaintiffs also argue that the case has been delayed by other defendants and the McNeill defendants' default was not also punished by cost sanctions. But cost sanctions were not available for entry of default under Fed. R. Civ. P. 55(a). Rule 55 has two distinct concepts, entry of default and default judgment, see United States v. Topeka Livestock Auction, Inc., 392 F. Supp. 944, 950 (N.D. Ind. 1975). The former is the prerequisite for the latter, see Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998); Kearney v. New York State Legis., 103 F.R.D. 625, 628 (E.D.N.Y. 1984), but a default judgment need not be entered even if entry of default has been filed, see Taylor Made Golf Co. v. Carsten Sports, 175 F.R.D. 658, 660-61 (C.D. Cal. 1997). The latter is entry of judgment with costs under Rule 54(d), see Fed. R. Civ. P. 55(b). Thus, the McNeill defendants could not be sanctioned further for costs for their default, although conditions (including paying plaintiffs' costs) could have been imposed to set aside that default, see Propriety of Conditions Imposed in Granting Relief from Judgment under Rule of Civil Procedure 60(b), 3 A.L.R. Fed. 956 (1970), but no such conditions were sought (cf. Docket No. 134, Pls. Atty. Aff. ¶ 36 (plaintiffs sought denial of motion to set aside the default and scheduling of a default hearing)).

Without rearguing here the merits of imposing any sanction upon plaintiffs, the question here is whether to impose motion and aborted deposition costs as well as dismissal. As previously held (Docket No. 236, Report & Rec. at 24), there is no substantial justification for plaintiffs failure to comply with this Court's Order. Plaintiffs' conduct, however justified in their minds (as outlined in counsels' papers), was egregious enough to warrant not only dismissal of

their claims but also imposition of the reasonable financial costs associated with that conduct. If, for example, the District Court were to disagree about dismissal of their claims due to plaintiffs disobedience, at least the plaintiffs should bear the reasonable costs of their conduct that defendants endured. Next, the Court considers determining those reasonable costs.

III.     Attorneys' Fee Rates

Using the lodestar method for calculating the reasonable attorney's fee, Monahan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 83 (S.D.N.Y. 1994) (applying lodestar method to determining attorney's fee for Rule 37(a)(4)(A) relief); New York State NOW v. Cuomo, No. 93 Civ. 7146, 1996 U.S. Dist. LEXIS 17578, at *4 (S.D.N.Y. Nov. 26, 1996) (Francis, Mag. J.) (same); see Hensley v. Eckerhart, 461 U.S. 424, 429-30, 430 n.3 (1983) (applying for fees under 42 U.S.C. § 1988), the components for determining the reasonable attorneys' fee portion of these motion expenses are moving attorney's time spent on the motion and the reasonable billing rate for that attorney. Another component for determining the overall reasonable motion expenses are the reasonableness of the other motion expenses incurred.

The SPCA defendants motion expenses sought in their application are exclusively their attorneys' fees, including the rates for the partner, an associate, and a paralegal who assisted lead counsel. The McNeill defendants mostly seek to recover their attorneys' fees as moving costs. The rate or amount an attorney bills his or her client related to discovery or a motion to compel does not make that rate or time expended reasonable under Rule 30 (or Rule 37) as reasonable motion expenses. See Kahn v. General Motors Corp., No. 88 Civ. 2982, 1993 U.S. Dist. LEXIS 5196, at *4 (S.D.N.Y. Apr. 19, 1993). While the SPCA defendants previously had their partner's rates (of $210 per hour) upheld as reasonable by this Court, see Docket No. 234, Order, at 5-6,

9

there has been no similar finding for the McNeill defendants' rate of $165 per hour or the rates for the SPCA defendants' associate or paralegal.  The McNeill defendants only discuss the time spent and indicate the billing rate for their attorney, without giving their attorney's (Janet Callahan) relevant experience.  The Court takes judicial notice of the fact that Callahan has been admitted to practice in New York and before this Court and is a partner at Hancock & Estabrook, LLP, a major law firm in Syracuse, with 20 years experience.  See generally http://www.hancocklaw.com; Fed. R. Evid. 201.  Plaintiffs, however, do not challenge any aspect of the fee calculation.

To be reasonable, the hourly rates of the movants' attorney must be generally consistent with prevailing market rates in this city and district, see NYS NOW, supra, 1996 U.S. Dist. LEXIS 17578, at *5.  It is within this Court's discretion to determine the reasonableness of those rates based on the Court's knowledge of prevailing community rates and the relative experience of counsel, Creative Res. Group of N.J., Inc. v. Creative Res. Group, Inc., 212 F.R.D. 94, 103 (E.D.N.Y. 2002) (Wall, Mag. J.) (Report & Recommendations, citation omitted).  The movants seeking reimbursement bear the burden of proving the hours spent and the prevailing rates. 7 Moore's Federal Practice--Civil § 37.23[8] (2005).

As previously noted (Docket No. 234, Order at 6), in other cases involving Galvin's firm, Hodgson Russ, for discovery sanction fee awards, this Court has awarded reasonable attorney's fees ranging from $130-145 per hour for a second-year associate to $290 per hour for a partner with twenty-five years' experience.  DirecTV, Inc. v. Rowland, Case No. 04CV297, Docket No. 47, Movant's Atty. Aff. ¶ 7 (June 1, 2005, affidavit in support of attorneys' fee); DirecTV, Inc. v. Perrier, Case No. 03CV400, Docket No. 72, Movant's Atty. Aff. ¶¶ 3-4 (Feb. 15, 2005,

affidavit in support of attorneys' fee).  By comparison, Galvin's uncontested rate of $210 per hour is reasonable.  As for her associate's rate of $150 per hour, that rate also appears to be reasonable, see Rowland, supra, No. 04CV297, Docket No. 47.  As for the paralegal's rate of $80 per hour, the SPCA defendants contend that her rate here is less than what would be reasonable in this legal community for a paralegal of her level of expertise (Docket No. 238, SPCA Defs. Atty. Decl. ¶ 11).  Again, plaintiffs have not countered this assertion.  This rate also appears reasonable.

As to the McNeill defendants' attorney's fee rate, if this Court accepts $210 per hour for a partner, then the $165 per hour cited by McNeill defendants' attorney (based in Syracuse) is also reasonable.

IV.   Time Expended

The next element is the time expended by defense counsel leading up to their motions. The Court closely scrutinized the claims for time expended in preparing the motion (with attorney's declarations containing numerous exhibits and moving papers) and preparing for the depositions[6].  The SPCA defendants claimed almost 33 hours were spent preparing for the deposition and 50.5 hours in researching and drafting the moving papers for their motion to compel (Docket No. 238, Exs. A, B).  Most of the paralegal's time spent in preparing for the depositions was in gathering background information about other cases where plaintiffs were parties.  The McNeill defendants claim 12 hours spent in preparing for the deposition, travel to and from the aborted session, and preparation of their motion (Docket No. 237, Ex. A).  Again,

---

[6]Movants, however, did not provide totals for the hours expended by each person or subtotals of the fees for each person.  The Court had to calculate these figures in rendering this Order.

11

plaintiffs do not dispute the time expended either in preparing for the depositions (claiming that plaintiffs' counsel also spent a great deal of time preparing for the depositions, both plaintiffs' and other witnesses, e.g., Docket No. 240, Vinal Decl. ¶ 10) or in preparing the moving papers.

The SPCA defendants' time claims seem excessive. Thus, the Court determines that **$2,920.00** is a reasonable total costs for their deposition preparation and motion costs.

As for the McNeill defendants, the attorney's fee portion of their application sought $1,980.00 (Docket No. 237, McNeill Defs. Atty. Decl. ¶¶ 6, 4, Ex. A), claiming that counsel spent 10 hours preparing for and traveling for the depositions and 2 hours researching and drafting their motion (id. Ex. A). This Court find the amounts of time claimed are reasonable. Thus, the total attorneys' fee award for these defendants is **$1,980.00** as sought by them. The next element is defendants' motion expenses, including expenses related to the aborted depositions.

V.     Reasonable Motion Costs

The McNeill defendants also seek to recover travel expenses of $149.70 for counsel's trip from Syracuse to Buffalo and back on December 4, 2006 (Docket No. 237, McNeill Defs. Atty. Decl. ¶ 6, Ex. A). They, however, do not detail what their out of pocket travel expenses were (such as tolls, gasoline, meals, lodging, if any) to justify such a high figure. Again, plaintiffs have not voiced their view as to the calculation of these expenses. Rather than continue this collateral matter in an action recommended to be dismissed, this Court finds that the reasonable amount of their expenses that should be recoverable as sanction is **$100.00**.

VI.     Summary

As a result, the total reasonable motion costs (attorneys' fees and expenses) for the McNeill defendants is **$2,080.00**, while the reasonable motion costs for the SPCA defendants is **$2,920.00**; the total amount of the sanction to all moving defendants is **$5,000.00**.

VII.    Party Liable for Sanction

    A.      Plaintiffs, Counsel or Both?

Under Rule 37, the party, his or her counsel or both may be liable for discovery sanctions, Fed. R. Civ. P. 37(a)(4)(C). For failing to comply with an Order, the Court may also impose cost sanctions upon the disobedient party "or the attorney advising that party or both," id. R. 37(b)(2). While the McNeill defendants state that they will accede to the Court's apportionment of this liability (see Docket No. 237, McNeill Defs. Atty. Decl. ¶ 8), the SPCA defendants want the Court to repeat its equal split of liability between plaintiffs and their counsel, having half paid by plaintiffs and half paid by the firm of Vinal & Vinal (see Docket No. 238, SPCA Defs. Atty. Decl. ¶ 15). They do not consider whether to impose sanctions upon plaintiffs' co-counsel, Richard Baumgarten. Baumgarten argues that if plaintiffs' claims are to be dismissed for plaintiffs non-compliance, then any additional monetary sanction should be imposed (if at all) upon the persons responsible for the sanction, plaintiffs (see Docket No. 241, Baumgarten Reply Affirm. ¶¶ 31-32). Vinal argues that sanctions should not be imposed upon her firm or her clients (see generally Docket No. 240, Vinal Decl.).

First, plaintiffs' failure to attend their deposition (despite their financial and medical excuses) was not substantially justified to avoid imposition of sanctions (see Docket No. 236, Report & Rec.). Second, plaintiffs fail to establish that other circumstances make an award of

13

sanctions here unjust. Plaintiffs have failed to substantiate their claims of poverty to avoid paying the amounts sought in these applications.

Plaintiffs disobeyed the Court's Order to appear at a deposition and attempted to excuse this appearance by sending faxes to the Court and to counsel giving their excuse. As noted in the Report & Recommendation, plaintiffs acted unilaterally and without the advice of counsel (Docket No. 236, Report & Rec. at 16). Vinal and Baumgarten argue that they advised plaintiffs against not attending the depositions and did everything within their power to get plaintiffs to come to Buffalo for the depositions (e.g., Docket No. 240, Vinal Decl. ¶¶ 13, 19-21, 25). Only now do plaintiffs' counsel outline additional reasons raised by their clients against appearing. (e.g., id. ¶ 22).

While plaintiffs' counsel could have done more than they did (see Docket No. 236, Report & Rec. at 15-16), including making a belated motion for a protective order and arguing their clients hardships to avoid depositions under the conditions ordered, there was little counsel could have done if plaintiffs were determined not to come to Buffalo for the December 4 depositions. Here the attorneys advised against disobeying the Court Order and advised the consequences of that disobedience. As a result, plaintiffs counsel will **not be sanctioned** with costs.

      B.      Claim of Plaintiffs' Inability to Pay

Plaintiffs previously argued that they could not afford to come from Allegany County to Buffalo for their depositions, and later contended that the health of some of the plaintiffs prevented their attendance. Plaintiffs' counsel argued (in response to an earlier sanction) that her clients "were financially devastated by the acts of the SPCA in taking away all their cows, which

14

are their means of livelihood" and cannot afford to pay any sanction (Docket No. 228, Pls. Atty. Aff. ¶ 6). But counsel still has not presented any documentation to support this; all that was submitted for that motion was Sandra Sheehy's affidavit and the claim of economic hardship relies upon the allegations in the underlying Complaint. Plaintiffs responses to this present application only argue that the sale of the cattle at issue in this case at distress prices deprived plaintiffs of their property (Docket No. 240, Vinal Decl. ¶ 6) and do not address their present ability to pay sanctions (or whether they paid the earlier ordered sanction). Again, given the relatively modest amounts of the sanctions imposed, plaintiffs shall still be held fully responsible for their share of the sanction, despite their unsubstantiated claims of poverty, cf. 28 U.S.C. § 1915(a)(1) (party seeking in forma pauperis status must submit an affidavit that includes a statement of all assets the person possesses).

    C.    In Sum

As for apportioning liability, plaintiffs jointly are responsible for the sanction; plaintiffs' counsel (both Vinal & Vinal and Richard Baumgarten) are not responsible for the sanction. As a result, plaintiffs are responsible for the full sanctions totaling $5,000.00 in reasonable motion costs.

VIII.    Timing of Payment of Sanction

The SPCA defendants seek an Order directing the liable parties to pay within fourteen days of entry of the Order (Docket No. 238, SPCA Defs. Atty. Decl. ¶ 15). Plaintiffs have not responded to this request or stated that the time sought would be a hardship to them. That request is **granted**.

## CONCLUSION

For the reasons stated above, on the sanctions fee application of defendants Mary Ann Wehlage and the Allegany County Society for the Prevention of Cruelty to Animals (Docket No. 238; see Docket Nos. 215, 236), they shall recover **$2,920.20** as discovery sanctions against plaintiffs. Of this award, plaintiffs are solely and jointly responsible for the entire amount.

On the application of defendants McNeill and Lakewood Veterinary Service (Docket No. 237; see Docket Nos. 219, 236), they shall recover **$2,080.00** as discovery sanctions against plaintiffs. Of this award, plaintiffs again are solely and jointly responsible for the entire amount.

Plaintiffs shall pay defendants within fourteen (14) days of entry of this Order.

So Ordered.

                                                            */s/ Hugh B. Scott*
                                                            Honorable Hugh B. Scott
                                                            United States Magistrate Judge

Dated: Buffalo, New York
       February 20, 2007